(No. 21616.—

THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff in Error, *vs.* LEO BENSON, Defendant in Error.

*Opinion filed February 23, 1933—Rehearing denied April 7, 1933.*

DUNN and DEYOUNG, JJ., dissenting.

DANIEL TAYLOR, and MILLER, ELLIOTT & WESTERVELT, (EUGENE R. JOHNSON, of counsel,) for plaintiff in error.

JOHN E. CASSIDY, for defendant in error.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

Leo Benson, an employee of the Chicago, Rock Island and Pacific Railway Company as a switchman for a period of nine or ten years, was on August 17, 1929, injured by a train of the railway company. He brought suit in the circuit court of Peoria county based on his injuries and recovered a judgment of $32,500, which was affirmed, on appeal, by the Appellate Court for the Second District. The case is here on *certiorari*.

The declaration consists of two counts, each of which charges that on August 17, 1929, Benson and the railway company were employee and employer, respectively, and engaged in interstate transportation by rail, and that Benson was employed in defendant's railroad yards in Peoria as a member of a train crew. The first count charges that he was engaged in switching a certain cut of railway cars in the work of interstate commerce; that while he was so engaged he was injured because of the negligence of the company in permitting a strand of wire to be attached to a hand-hold of one of the cars in the switching cut, which made it unsafe for the employees; that when he was in the act of securing himself and his personal safety by grasping the hand-hold his glove became entangled in the wire, as a result of which he was pulled or dragged some distance, after which he was struck by another freight car which was then in the same switching operation, resulting in injuries to him. The second count avers that at the time of his injury Benson was engaged, as an employee of the company, in interstate commerce in a certain switching opera-

tion, and that by reason of carelessness and recklessness of the agents and servants of defendant a railway car was propelled against him with great force, striking him in the back, causing the injuries there recited. The only plea was that of not guilty.

The accident occurred about 11:00 o'clock on the morning of August 17, 1929, while he and three others were engaged in a switching operation with a train consisting of an engine and seven or eight freight cars. They were engaged in setting the cars in places where they were either to be loaded or unloaded and then sent to their particular destinations. This train had been made up and moved down into the yard, where the cars were taken from the main track and shunted onto a side track, pushed by the engine. At the time of the accident Benson was standing by the side of the track, facing the approaching cars. It was his duty to uncouple the first car, or the one farthest from the engine, by pulling a coupling pin, and then the fireman, standing off from the side of the train, would signal the engineer to stop the engine and the other cars, and the car that had been uncoupled would roll on down the track to its destination. The cars were approaching Benson at a rate of speed estimated at six to eight miles per hour. As the first car reached him he reached up with his right hand and took hold of the grab-iron and with his left hand uncoupled the car from the rest of the train. It was the switchman's custom to always run a short distance beside the car as it was uncoupled, so that if there was any slack in the train the next car to the one that had been uncoupled would not strike him. This Benson did when he uncoupled the car, but discovered that his hand was caught by his glove on the grab-iron and he could not release himself. He stumbled and was dragged along until his glove was torn loose. He was struck by the next car to the one that he had released and was knocked down and severely injured. After the accident the grab-iron on which his hand had

been caught was examined, and it was discovered that a piece of No. 9 fence wire, with a hook on the end, was wrapped around the grab-iron.

It is first contended by plaintiff in error that at the time the accident occurred Benson was not engaged in interstate commerce. The trial court found that he was so engaged, and the Appellate Court affirmed that finding. Where the Appellate Court has affirmed a judgment for the plaintiff in an action at law the Supreme Court is precluded from weighing the evidence to determine where the preponderance lies, but where a motion is made to direct a verdict for the defendant the evidence may be examined for the purpose of determining whether, when all the evidence is considered in its aspect most favorable to the plaintiff, together with all its reasonable intendments, there is a total failure to prove any element necessary to maintain the cause of action alleged. (*Coal Creek Drainage District* v. *Sanitary District*, 336 Ill. 11.) There is evidence tending to show that in the cut of cars being switched at the time of the accident there was a tank car of acid consigned from Marquette, Michigan, to the United States Industrial Alcohol Company of Peoria, Illinois, one from New Orleans, Louisiana, to the same alcohol company in Peoria, and one from the Commercial Solvents Corporation of Peoria of methanol, consigned to the Heyden Chemical Corporation, Garfield, New Jersey. The evidence with reference to these three cars tended to give an interstate character to the cut, to the switching crew and to the operation in which they were engaged. Plaintiff in error's contention in this regard cannot be sustained.

During the progress of the trial plaintiff in error made a motion to withdraw a juror and for a mis-trial, and in support of that presented an affidavit of one of its claim inspectors and adjusters to the effect that during the morning recess, and while the jury in the case was out in the lobby of the court house, the affiant saw the investigator

for the attorney for the plaintiff mingling with the jurors in the case and saw him talking to one of them; that the investigator had attended the trial of the case and had been sitting at the table with plaintiff's counsel almost continuously during the trial of the cause. The court denied the motion, and thereafter the investigator named as having been seen talking to one of the jurors was called and denied having had any conversation with any of the jurors in the case. This motion, and the hearing thereon, were outside of the presence and hearing of the jury. While it is highly improper for an investigator or other party engaged in the prosecution of a case which is being tried by a jury to mingle with and have a conversation with a juror in the cause, the court did not err in this case in refusing to withdraw a juror.

The doctrine of assumed risk does not apply to this case. A party entering the service of a railroad company or other corporation using locomotives as a propelling power assumes by his contract of employment all the ordinary hazards arising from the performance of the duties of his voluntary engagement. (*Missouri Furnace Co.* v. *Abend,* 107 Ill. 44.) A servant does not assume extraordinary risks not necessarily incident to his employment unless such risks are obvious or fully known and appreciated and he voluntarily continues to work after such knowledge. (*Illinois Terminal Railroad Co.* v. *Thompson,* 210 Ill. 226.) Neither does he assume risks not ordinarily connected with the service nor which are due to the master's failure to exercise reasonable care and prudence. (*Chicago and Northwestern Railway Co.* v. *Gillison,* 173 Ill. 264; *City of LaSalle* v. *Kostka,* 190 id. 130.) This rule applies to cases arising under the Federal Employer's Liability act as well as to ordinary cases of negligence. (*Brant* v. *Chicago and Alton Railroad Co.* 294 Ill. 606; *Kusturin* v. *Chicago and Alton Railroad Co.* 287 id. 306.) In *Gila Valley, G. & N. Railroad Co.* v. *Hall,* 232 U. S. 621, it is said: "An employee

assumes the risk of dangers normally incident to the occupation in which he voluntarily engages so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence until the employee becomes aware of such defect or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it."

Section 4 of title 45 of the U. S. Code Annotated, entitled "Railroads," provides: "Until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or hand-holds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." The grab-irons or hand-holds on the car in question complied with this section of the act. The wire which had been placed thereon by some person was no part of the grab-iron. (*Reeves* v. *C., S. P., M. & O. Ry. Co.* 179 N. W. 689; *Slater* v. *C., S. P., M. & O. Ry. Co.* 178 id. 813; *Craver* v. *Franklin Cotton Mills*, 145 S. E. 570.) We do not, however, mean to be understood as saying that allowing the wire to remain upon the grab-iron a sufficient length of time to constitute notice to the company might not constitute negligence.

Plaintiff in error has assigned as error the action of the trial court in sustaining Benson's objection to admitting

in evidence his written application for employment in the company's service for the purpose of comparing his handwriting with other of his handwriting on the exhibits, and also for the purpose of showing that he had knowledge of the dangerous work in which he was employed. A switching operation is recognized by everyone as being dangerous. No good purpose would have been served by admitting in evidence Benson's application for employment made several years prior to the trial.

During the trial, and out of the presence of the jury, counsel for plaintiff in error asked permission of the court to ask Benson if he would submit to a physical examination either by a physician or surgeon to be selected by the court or with the aid of Benson's counsel and in the presence of such of his own physicians or surgeons as he desired to be present, for the purpose of ascertaining his present physical condition, and particularly with respect to those matters about which he testified, and stated that it was counsel's firm belief that such examination would show that the conditions of which he testified are either not present or not as severe as claimed by him. The offer was to have the examination made under such direction as the court and counsel for plaintiff in error might suggest and at plaintiff in error's expense. While it would seem that there might be some good reasons advanced for a contrary rule, this court held in *Mattice* v. *Klawans,* 312 Ill. 299, that to permit such a question to be asked in the presence of the jury practically compelled him to submit to the examination because of the unfavorable effect likely to be produced upon the minds of the jury if he refused, and that it was the settled law of this State that the plaintiff in an action of this kind could not be required to submit to a physical examination as to his injuries. The *Mattice case* was referred to with approval in *People* v. *Scott,* 326 Ill. 327. To this rule we now adhere.

After plaintiff in error's briefs had been printed counsel obtained leave of the court to file additional authorities to the effect that "if a person testify in his own behalf and there are material conflicts and contradictions in his testimony, he is not entitled to recover, if he be the plaintiff, unless that portion of his testimony which is least favorable to his contention is of such a character as to authorize a recovery in his behalf." The authorities cited are from courts of other States and differ from the rule of this State, upon a motion to direct a verdict, hereinabove stated, as laid down in *Coal Creek Drainage District* v. *Sanitary District, supra,* and numerous other cases, and it is by this rule that we must be governed in the examination of the evidence in this case.

It is contended by plaintiff in error that there is no evidence tending to show that it was guilty of any negligence which was the proximate cause of Benson's injury. The second count of the declaration, as to plaintiff in error's negligence, alleges that "by reason of the carelessness and recklessness and negligence of the defendant by and through its agents and servants, a certain railway car was then and there propelled against the plaintiff with great force and violence, so that the plaintiff was thrown upon the ground there, and as a direct and proximate result of such negligence and carelessness upon the part of the defendant the plaintiff was then and there seriously injured." This allegation is extremely broad. No good purpose would be subserved by going over the evidence in this case in detail. We cannot weigh the evidence or determine upon which side the preponderance lies. We can only examine it for the purpose of determining whether, when all the evidence is considered, in its aspect most favorable to the plaintiff, together with all its reasonable intendments, there is a total failure to prove any element necessary to maintain the cause of action alleged. This we have done without regard to statements in the Appellate Court's opinion as to

what facts had been proved, and we cannot say that there is such total failure of proof.

Finding no reversible error in the record, the judgment of the Appellate Court is affirmed. *Judgment affirmed.*

DUNN and DEYOUNG, JJ., dissenting.