## ATCHISON, TOPEKA & SANTA FE RAILWAY CO. *v.* SCARLETT.

No. 505.   Argued March 3, 1937.—Decided March 29, 1937.

*Messrs. H. K. Lockwood* and *Robert Brennan,* with whom *Mr. Charles H. Woods* was on the brief, for petitioner.

*Mr. Louis E. Goodman,* with whom *Mr. Herman A. Bachrack* was on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action under the Federal Safety Appliance Act (Act of April 14, 1910, c. 160, §§ 2 and 3, 36 Stat. 298*), brought by Scarlett against the railway company to recover damages for a personal injury resulting from an alleged violation of the act. It also was generally alleged that the injury was due to the negligence of the railway company. Scarlett was employed as a brakeman. While descending from a box car by means of a ladder attached to the side of the car, his foot slipped on a round brace rod, also attached to the side of the car immediately behind the ladder, and he fell to the ground, thereby sustaining the injury for which damages were sought.

The ladder itself was not defective. In its structure it complied with the regulations of the Interstate Commerce Commission made in pursuance of the act. "United States Safety-appliance Standards"—order of March 13, 1911. It is unnecessary to set forth these regulations. The only one important here prescribes—"Minimum clearance of treads, [shall be] two (2), preferably two-

---

*Section 2, so far as pertinent, provides that ". . . all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure hand holds or grab irons on their roofs at the tops of such ladders: . . ."

Section 3 requires the Interstate Commerce Commission, within a time fixed, to designate the number, dimensions, location and manner of application of the appliances provided for in the foregoing section. And these designations were to "remain as the standards of equipment to be used on all cars subject to the provisions of this Act, unless changed by an order of said Interstate Commerce Commission . . ."

and-one-half (2½), inches." The round brace rods with which the car was equipped extended outward from the wall of the car a distance of more than an inch. These brace rods operated to strengthen the walls of the car. That was their only purpose; and there is no doubt as to their necessity for that purpose. The brace rod in question ran down the side of the car at an angle of about 45°. The ladder overlay the brace rod, and cleared its outermost surface by more than the prescribed 2½ inches.

Scarlett's contention is that the brace rod is a part of the ladder, and by reason of its slant and rounded shape made the descent of the ladder insecure. At the trial, he abandoned his claim based upon negligence, and put his case wholly on the ground that the round diagonal brace rod and the ladder combined to constitute an unsafe appliance within the meaning of the act, and that, in consequence, the liability of the railway company was absolute. The case was submitted to the jury by the trial court upon that theory, and a verdict and judgment against the company resulted. That judgment the court below affirmed on appeal. 7 Cal. (2d) 181; 60 P. (2d) 462.

The record shows that brace rods, generally flat in shape, are in practically universal use on box cars. The company here formerly used a flat rod; but finding that such a rod frequently buckled, sometimes immediately under the ladder, it was abandoned and the stronger and less elastic round type was adopted in its place. This was in 1924; and the proof shows that for many years cars so equipped have been in general and constant operation on its lines. The general foreman of the company, having charge of all the car repairs at one of the principal shops, and who inspected a thousand cars each month, testified that he had never heard of an accident attributable or claimed to be attributable to the round brace rod, except

in the present case. The record shows nothing to the contrary.

In the light of the long-continued use of brace rods of the type here in question in the same relation to the ladder as is the case here, we may fairly presume that the Interstate Commerce Commission in the performance of its duties was aware of the situation, and knowingly permitted its rule in respect of the ladder clearance to remain without change. Compare *Pennell* v. *Philadelphia & Reading Ry.*, 231 U. S. 675, 680. The regulation having been made by the commission in pursuance of constitutional statutory authority, it has the same force as though prescribed in terms by the statute. And the railway company having strictly complied with the regulation has discharged its full duty so far as the ladder requirement of the Safety Appliance Act is concerned. The judgment of the trial court and jury cannot be substituted for that of the commission. See *Kansas City So. Ry.* v. *United States,* 231 U. S. 423, 456–457; *Napier* v. *Atlantic Coast Line,* 272 U. S. 605, 611–612; *Mahutga* v. *Minneapolis, St. P. & S. S. M. Ry. Co.,* 182 Minn. 362, 366; 234 N. W. 474; *Auschwitz* v. *Wabash Ry. Co.,* 346 Ill. 190, 204; 178 N. E. 403; *Ford* v. *New York, N. H. & H. R. Co.,* 54 F. (2d) 342, 343.

In *Illinois Central R. Co.* v. *Williams,* 242 U. S. 462, 466, we held that § 2 of the act requiring secure ladders, etc., was operative pending action by the Interstate Commerce Commission under § 3. In the interim, we said, § 2 had the effect of prescribing an absolute and imperative duty, of making the ladders and other appliances "secure"; but that § 3 contemplated that these appliances "shall ultimately conform to a standard to be prescribed by the Interstate Commerce Commission, that is, that they shall be standardized . . ."

We do not see how it reasonably can be said that the brace rod constitutes a part of the ladder. In itself, it

was a contrivance separate and distinct from the ladder, designed and used for a purpose entirely apart from the use of that appliance. The right of recovery, if any, must, therefore, rest upon the effect of the near proximity of the ladder to the rod, neither being in itself defective. The law to be applied to that situation is the common-law rule of negligence, and not the inflexible rule of the Safety Appliance Act; and the questions to be answered are whether the two appliances were maintained in such relation to one another as to constitute negligence on the part of the company and, if so, whether Scarlett assumed the risk. *Ford* v. *New York, N. H. & H. R. Co.,* *supra; Chicago, R. I. & P. Ry. Co.* v. *Benson,* 352 Ill. 195, 199; 185 N. E. 244; *Slater* v. *Chicago, St. P., M. & O. Ry. Co.,* 146 Minn. 390, 392–393; 178 N. W. 813. In that view, Scarlett in abandoning his claim under the common-law rule of negligence abandoned the only possible ground of recovery.

> *Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.*