SOUTHERN PAC. CO. v. CARSON.
No. 11773.

Circuit Court of Appeals
Ninth Circuit.
Aug. 25, 1948.

C. W. Cornell, O. O. Collins, and John R. Allport, all of Los Angeles, Cal., and Lawrence L. Howe, of San Francisco, Cal., for appellant.

Hildebrand, Bills & McLeod and D. W. Brobst, all of Oakland, Cal., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This case involves the application of a provision of the Safety Appliance Acts, 45 U.S.C.A. §§ 11 and 12,[1] and the regulations thereunder.

Appellee, a yardman in appellant's employ, was injured in the latter's Tucson yard while engaged in switching a cut of cars consisting of a box car and two tank cars. It was his duty to ride this cut and tie it down in the clear of the switch points. He was on the brake platform of one of the tank cars, which was equipped with a hand appliance of the type known as a staff brake, and it was his business to wind up the brake so that the cars would be stopped and held on the track. The Tucson yard is a hill yard and the track on which the cut had to be tied down was on a grade. The cars could not be held by setting the brake by hand, that is, merely by manually turning the brake wheel. It was necessary to use a brake club as a lever. The club is inserted in the spokes of the brake wheel; and in appellee's winding up operation, while he was using the normal force, the club broke and he was thrown against the end of the car.

The brake club, supplied by appellant in large quantities for the use of its employees, is a piece of hickory wood. From the description and a photograph of the club contained in the record it appears to be about the shape and dimensions of the handle of the ordinary double-bitted axe. Appellee had obtained the club he was using from the club can located in front of appellant's yard office. Clubs of this type had been in general use in appellant's yards, and apparently to a large extent on its main lines, for at least eighteen years. The company purchases the clubs from a reputable dealer and prior to use subjects one out of every twenty in each shipment to a mechanical

[1] "§ 11. It shall be unlawful for any common carrier subject to the provisions of sections 1-16 of this title to haul, or permit to be hauled or used on its line, any car subject to the provisions of said sections not equipped with appliances provided for in sections 11-16 of this title, to wit: All cars must be equipped with * * * efficient hand brakes; * * *

"§ 12. The number, dimensions, location, and manner of application of the appliances provided for by sections 4 and 11 of this title as designated by the Interstate Commerce Commission shall remain as the standards of equipment to be used on all cars subject to the provisions of sections 1-16 of this title, unless changed by an order of said Interstate Commerce Commission, to be made after full hearing and for good cause shown; and failure to comply with any such requirement of the Interstate Commerce Commission shall be subject to a like penalty as failure to comply with any requirement of sections 11-16 of this title. Said commission is hereby given authority, after hearing, to modify or change, and to prescribe the standard height of drawbars and to fix the time within which such modification or change

test of a minimum of five hundred pounds pressure. It is uncontroverted that at least in the Tucson yard the hand brake does not function efficiently unless a brake club is employed.

■ Appellee's complaint was drafted under the terms of the Federal Employers' Liability Act,[2] that is to say, on the theory that appellant failed to exercise ordinary care to supply him with a non-defective brake club with which to perform his work. There was enough evidence of negligence in this respect to carry the case to the jury, and in the main the cause was submitted to them on the issue of negligence as framed by the pleadings. However, in the course of the trial the facts above outlined were developed and appellee requested instructions predicated on the inflexible provisions of the Safety Appliance Act.[3] In partial response to the request the court gave the following instruction:

"If you find from a preponderance of the evidence that the hand brake on the tank car in question would not operate efficiently without the use of a brake club, and if you find further from a preponderance of the evidence that the brake club in question was a necessary part of the hand brake on the tank car, then and in that event only, you may apply the following instructions which I will give you.

"Where plaintiff's contributory negligence and defendant's violation of a provision of the Safety Appliance Act are concurring proximate causes, the Federal Employers' Liability Act requires plaintiff's contributory negligence, if any, be disregarded."

Appellant contends that as a matter of law the brake club was not a part of the hand brake within the intendment of the Safety Appliance Act and the order of the Interstate Commerce Commission, hence the court committed reversible error in allowing the jury to determine the question as one of fact. Objection was seasonably interposed to the instruction on this ground, and if the objection were valid we would be obliged to reverse the judgment. The jury returned a general verdict in favor of the plaintiff; and in the absence of a special verdict on the point we are unable to say that the jury did not determine the amount of plaintiff's damages on the basis of a violation of the Safety Appliance Act. It is of no moment that the court illogically or mistakenly limited the effect of that Act to the issue of contributory negligence while leaving upon the plaintiff the burden of proving negligence on the part of the railway company.

Pursuant to § 3 of the Safety Appliance Act of April 14, 1910,[4] 45 U.S.C.A. § 12, supra, note 1, the Interstate Commerce Commission, on March 13, 1911, promulgated an order prescribing "the number, dimensions, location and manner of application" of hand brakes. No changes in this regulation have since been made. After ordering generally that each box or other house car "shall be equipped with an efficient hand brake" to operate in harmony with the power brake thereon, the Commission prescribed the dimensions, etc., of the standard appliance. The order was devoted to mechanical details; and while, among numerous other specifications, the size and permissible shapes of the brake wheel and the metals of which it is to be fabricated were specified, no mention was made of a brake club or cognate contrivance to be used in conjunction therewith.

■■ Appellant claims that the omission is conclusive of the matter inasmuch as the Commission, not the court or jury, was authorized to set the standard. Its argument, in effect, amounts to this: The hand brake on the tank car conformed in all respects to the specifications set forth in the regulation, hence it must in law be regarded as efficient, without more, notwithstanding it

shall become effective and obligatory, and prior to the time so fixed it shall be unlawful to use any car or vehicle in interstate or foreign traffic which does not comply with the standard now fixed or the standard so prescribed, and after the time so fixed it shall be unlawful to use any car or vehicle in interstate or for-

eign traffic which does not comply with the standard so prescribed by the commission." thereunder.

[2] 45 U.S.C.A. § 51 et seq.

[3] It is not complained that this would be improper procedure if there was evidence of an actual violation of that Act.

[4] 36 Stat. 298, Ch. 160.

was in fact inefficient except when operated with a brake club. We disagree. The Act in absolute and imperative terms requires that all cars "be equipped with * * * efficient hand brakes." There can be no doubt that by this language Congress meant to require the installation of brakes acting or having the power to act effectually.[5] Such is the meaning ordinarily ascribed to the word "efficient."

The legislative mandate was not superseded or rendered nugatory by the Commission's order. Its virility, we think, remains unimpaired. No language which would support a contrary view is to be found in the statute. Cf. Illinois Central R. Co. v. Williams, 242 U.S. 462, 37 S.Ct. 128, 61 L.Ed. 437. In Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411, the Court invoked and gave independent effect to provisions of the Boiler Inspection Act although a regulation of the Commission covering the same matters was extant. See, also, the similar treatment accorded that Act in B. & O. R. R. Co. v. Groeger, 266 U.S. 521, 527, 45 S.Ct. 169, 69 L.Ed. 419.[6] True, in the Groeger case the Court held that it was error to authorize the jury to find that the standard of duty imposed by the Boiler Inspection Act required a fusible plug to be installed in the crown sheet, when the Commission's regulation did not require the use of fusible plugs. But as will be apparent on a reading of the opinion the holding in this respect is distinguishable on a variety of grounds. The opinion, for example, leaves no doubt that had the boiler actually been equipped with a fusible plug the railroad company would have been regarded as an insurer of the installation.

We turn to the case of Atchison, Topeka & Santa Fe Ry. Co. v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 543, 81 L.Ed. 748, on which appellant mainly relies. There the respondent, a brakeman, was injured when his foot slipped on a slanting brace rod which was immediately behind the ladder he was using in his descent from a box car. The ladder, in respect of the space between it and the brace rod, as well as in all other respects, was shown to have conformed to the Commission's requirements. The Court held that there had been no violation of the Safety Appliance Act, which, we may add, requires merely that cars shall be equipped with secure ladders. It said that "the railway company having strictly complied with the regulation has discharged its full duty so far as the ladder requirement of the Safety Appliance Act is concerned." But significantly enough the Court was not content to stop there. Evidently disinclined to rest decision solely on the regulation, as we are asked to do here, it analyzed the facts, saying, "We do not see how it reasonably can be said that the brace rod constitutes a part of the ladder. In itself, it was a contrivance separate and distinct from the ladder, designed and used for a purpose entirely apart from the use of that appliance." Therefore, it was thought, the right of recovery must rest upon the effect of the near proximity of the ladder to the brace rod, neither being in itself defective; hence the common law rule of negligence, not the inflexible rule of the Safety Appliance Act, was the law to be applied.

The holding does not solve our problem. The factual situation involved was the direct opposite of that confronting us. Here, if the facts be given attention as plainly they must, it can not rationally be said that the brake club did *not* constitute a part of the hand brake. The club was not a contrivance separate and distinct from the brake, nor was it designed or used for a purpose apart from the use of the brake. On the contrary it was confessedly designed and used for a purpose inseparable from the use of the braking appliance. Moreover, in the Scarlett case, as the Court was careful to point out, long experience with the ladder as prescribed in the Commission's reg-

---

[5] The Safety Appliance Act, like the Boiler Inspection Act, 45 U.S.C.A. § 22 et seq., and other legislation in this field is to be liberally interpreted in the light of its purposes. Lilly v. Grand Trunk etc. Co., 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411.

[6] The Commission, under the Boiler Inspection Act, has broad regulatory authority analogous to that conferred on it by the Safety Appliance Act. Napier v. Atlantic Coast Line, 272 U.S. 605, 612, 47 S.Ct. 207, 71 L.Ed. 432.

ulation had not shown that it was rendered insecure by reason of its proximity to the brace rod.

Here the railway company itself found the use of the brake club to be essential to the efficient operation of its hand brakes; and presumably in the interest of the safety of its employees and others as well as for the protection of its own property it has acted on that experience. Had the club been furnished as a mere convenience in operation or merely for the purpose of lightening the task of the brakemen a different and more difficult question would be presented. But, in the circumstances actually shown, acceptance of the company's argument that the club it uses is not an integral part of the "efficient hand brake" it is by law required to supply would affront reason and run counter to the purposes of the legislation.

In view of the uncontroverted evidence we think the court might properly have instructed the jury as a matter of law that the brake club was an essential part of the hand brake, and that the Safety Appliance Act therefore governed. Appellant suffered no prejudice because of the submission of the question to the jury.

Affirmed.

DENMAN, Circuit Judge (concurring).

The question is, did the railway equip its frieght cars with a brake complying with the Interstate Commerce Commission's designated standards of Section 12 of the Safety Appliance Act, which brake, as permanently installed, complied with these standards but to which standards the railway added a defective lever bar to be applied to the brake wheel to make the brake efficient in the grades of its freight yard?

It is apparent that these standards as much may be violated by adding dangerous factors to the Commission's requirements as in omitting one or more of them.

Here, at the moment of leverage the lever bar became a part of the brake equipment. Because of the bar's weakness as the brake's lever, it broke and caused or contributed to cause the injury to the brakeman. Hence the railway's liability comes within the provision of 45 U.S.C. 53, 45 U.S.C.A. § 53, reading

"Sec. 53. Contributory negligence; diminution of damages. In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee. Apr. 22, 1908, ch. 149, § 3, 35 Stat. 66."

The district court's instruction with respect to this provision is

"If you find from a preponderance of the evidence that the hand brake on the tank car in question would not operate efficiently with the use of a brake club, and if you find further from a preponderance of the evidence that the brake club in question was a necessary part of the hand brake on the tank car, then and in that event only, you may apply the following instructions which I will give you.

"Where plaintiff's contributory negligence and defendant's violation of a provision of the Safety Appliance Act are concurring proximate causes, the Federal Employers' Liability Act requires plaintiff's contributory negligence, if any, be disregarded."

I think the instruction a proper application of the provision of section 53 to the above facts.

If there were doubt as to the propriety of construing section 12 as subject to violation by the *addition* of the weak lever to the brake, as distinguished from omitting an item of the Commission's requirements, it is controlled by the rule of liberal interpretation established in a series of Supreme

Court cases. This liberal view of the purpose of the Act has been so extended as to include the protection of *travelers on a highway crossing*, though that purpose, as stated in its title, is confined to the promotion of the safety only of "employees and *travelers upon railroads.*" 27 Stat. 531. Fairport R. Co. v. Meredith, 292 U.S. 589, 594, 54 S.Ct. 826, 78 L.Ed. 1446. The same liberal construction is given in Davis v. Wolfe, 263 U.S. 239, 243, 44 S.Ct. 64, 68 L.Ed. 284, where, though the statute's purpose is stated to be for "greater security to men in *coupling* and uncoupling cars," 45 U.S.C.A. § 4, a conductor, *not engaged in coupling* but injured by the structural failure of grab iron to be used in coupling but used by him in signaling to the engineer, recovered under the absolute obligation of the Safety Act. Similarly in Swinson v. Chicago & St. Paul Ry., 294 U.S. 529, 531, 55 S.Ct. 517, 79 L.Ed. 1041, 96 A.L.R. 1136. Cf. Lilly v. Grand Trunk R. Co., 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411.

The railway cites A. T. & S. Fe Ry. v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 81 L. Ed. 748. Contrary to its contention, that case sustains the above construction of section 12. There a projecting end of a brace rod strengthening the car's structure was close to a freight car's ladder and it was claimed that its *proximity* violated some safety provision. Both the ladder and the brace rod complied with the Commission's separate standards for each. Neither was a part of the other. The Court, 300 U.S. at pages 474, 475, 57 S.Ct. pages 543, 81 L.Ed. 748, stated the rule as follows:

"We do not see how it reasonably can be said that the brace rod constitutes a part of the ladder. In itself, it was a contrivance separate and distinct from the ladder, designed and used for a purpose entirely apart from the use of that appliance. The right of recovery, if any, must therefore rest upon the effect of the near proximity of the ladder to the rod, neither being in itself defective. The law to be applied to that situation is the common-law rule of negligence, and not the inflexible rule of the Safety Appliance Act; and the questions to be answered are whether the two appliances were maintained in such relation to one another as to constitute negligence on the part of the company and, if so, whether Scarlett assumed the risk. * * *"

It is clear that if the brace rod end were installed as a part of the ladder, the dangerous addition would have violated section 12.

The railway claims that it made a proper inspection of its hickory brake bars and contends, in effect, that its weakness is a latent defect. Its method of inspection is to test one of a group of rods. That method failed to disclose that the broken rod was smaller. The evidence warrants the jury to infer there had not been a sufficient inspection.