(No. 30845.—

HARRY E. WILLIAMS, Appellant, *vs.* NEW YORK CENTRAL RAILROAD COMPANY, Appellee.

*Opinion filed January 19, 1949—Rehearing denied March 16, 1949.*

EDWARD B. HENSLEE, of Chicago (MELVIN L. GRIF-FITH, and WALTER N. MURRAY, of counsel,) for appellant.

SIDNEY C. MURRAY, WILLIAM A. MORROW, MARVIN A. JERSILD, and LLOYD W. BOWERS, all of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Harry E. Williams, appellant, brought suit in the superior court of Cook County against the New York Central Railroad Company to recover damages for personal injuries sustained by him while working as a brakeman on one of the company's interstate trains. At the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a directed verdict. The motions being denied, the cause was submitted to the jury which returned

a verdict finding defendant guilty and assessing plaintiff's damages at $40,000. Defendant filed a motion for judgment notwithstanding the verdict and also a motion for a new trial, both of which were overruled and judgment entered on the verdict. The cause was appealed to the Appellate Court for the First District, where the judgment was reversed without remandment with final judgment in that court entered for the defendant. Petition for leave to appeal being allowed, the cause is now before this court for consideration.

The record discloses the accident occurred in the railroad or switch yards of defendant at Bellefontaine, Ohio, on November 23, 1944, at about 6:30 A.M. Plaintiff lived at Bellefontaine and was working as a rear brakeman on one of defendant's freight trains operating between Bellefontaine and Toledo. He was an experienced brakeman with a good record, fifty-four years of age, and had been in the continuous employment of defendant since 1913, first as a handyman and then as a machinist's helper. In 1916 he became a brakeman, and since 1923, when he successfully passed the examination for conductor, he worked either as a brakeman or a conductor.

On the morning in question he reported for work at the yards at 6:00 o'clock. There are thirteen tracks in the yards, all running north and south. The office is at the north end of the yards, in line with track 5; and about ten or fifteen feet north of the office, also in line with track 5, is a track with floodlights about 50 feet above the ground. These lights are focused toward the south to cover the entire yards. When plaintiff reported for work his train was made up and standing on track 5, although the engine had not yet been attached. The caboose was at the south end of the train and was about 45 or 50 car lengths south of the office.

Plaintiff's duty required him to make an inspection of the cars in his train, which he proceeded to do walking

south on the west side of the train toward the caboose observing the types of the various cars and ascertaining what cars had the brakes set. The five cars immediately north of the caboose were boxcars and the third car from the caboose was New York Central car 291872. It was an ordinary boxcar, but one from which the defendant had removed the roof and running board. Evidence was introduced showing that defendant had in use 290 such boxcars from which the roof and running board had been removed and that these cars were usually stenciled with a warning that they were open-topped cars, but that the usual warning was not on this car. The fact that this car had no roof or running board was unknown to plaintiff and he testified that as he walked along the ground making his inspection, there was nothing whatever on any of the boxcars to indicate that the roof had been removed from one of them. When plaintiff reached the south end of the train, he entered the caboose, and after performing minor duties, and after the engine had been coupled on and enough air had come through the train to hold it, he left the caboose to release the brakes. He first released the brake on the caboose and then the two cars north of it. The brake on the second car was on the south end and after releasing it, he walked along the running board looking for the brakes on the third car. He testified that it was dark, that the weather that morning was cloudy, either foggy or smokey, that as he walked along he was directly facing the floodlights which blinded him the same as if he had been walking along looking at the bright headlights of an automobile, that his lantern threw a light ahead of him for about ten feet or more, that his lantern was an oil lantern and not an electric light which throws a beam straight ahead; that he was using his lantern to find out about the car ahead of him; that he could not tell it was an open-top car, but could see that it was curved at the top of the end which was toward him and that it was probably a foot or 18

498

inches below him, and that after he saw the end of this third car, he stepped across from the car he was on intending to step on the running board of the third car. However, as there was nothing there he stepped off into space landing on the floor of the car, thereby receiving severe injuries.

The complaint alleged that the defendant disregarded its duty toward the plaintiff in one or more of the following ways: (a) Defendant was careless and negligent in that it used along its lines, a boxcar without a running board thereon, contrary to and in violation of the laws of the United States as set forth in chapter 1, section 11, 45 U.S.C.A. (b) Defendant was careless and negligent in not using ordinary care to furnish plaintiff with a reasonably safe place in which to do his work in that it allowed a boxcar, without a deck or running board thereon, to be hauled or used along its lines, when the condition of the car could not be seen in the darkness. (c) Defendant was careless and negligent in removing the roof or deck of the car and using the same along its lines when the defendant well knew or should have known that the men, in passing over the car in darkness, could not see that the car did not have a roof, deck or running board. (d) Defendant was careless and negligent in constructing or removing the roof, deck and running board from a boxcar with regular construction, except for this feature, as the defendant well knew or should have known that the same would be dangerous or hazardous. (e) Defendant was careless and negligent in not using ordinary care to warn plaintiff of the fact that the deck and running board of the car had been removed, when the defendant well knew that the plaintiff could not see that it had been removed in the darkness. (f) Defendant was careless and negligent in not using ordinary care to reasonably light its premises and cars so that plaintiff could see that the deck and running board had been removed from one of its boxcars. The complaint

further alleged that as a direct and proximate result of one or more of the foregoing acts of negligence, the plaintiff received the injuries for which he asked damages.

The defendant in its answer denied the negligence charged, denied that the injuries were the result of defendant's negligence and averred affirmatively that plaintiff's injuries were the proximate result of his own negligence and want of care. It was stipulated that defendant and the plaintiff, as its employee, were at the time of the accident both engaged in interstate commerce. Defendant in its written admission of facts filed at plaintiff's request, also admitted that when it received the boxcar in question from the builder thereof, it was equipped with a roof and running board and that prior to the time of the accident the defendant had removed both the roof and running board from said boxcar.

The question presented in this appeal is whether there is any evidence in the record from which it might reasonably be inferred that the defendant was guilty of any one or more of the charges of negligence and whether such negligence proximately caused the injuries complained of.

Plaintiff, who is the appellant in this court, contends: (1) That the railroad company in its use of said boxcar, without a roof and running board, was guilty of a violation of the Safety Appliance Act and the rules of the Interstate Commerce Commission, promulgated under the authority of said act. (2) Without regard to the Safety Appliance Act or the rules of the Interstate Commerce Commission, the railroad company, by its use of said car, at the time and place of the injury, was guilty of negligence in failing to use reasonable care and caution to furnish the plaintiff with a reasonably safe place to work. (3) Defendant's use of the car as aforesaid was the proximate cause of plaintiff's injury.

Defendant on its part claims there is no support in the record for the charge that it violated the Safety Appliance

Act or the rules of the Interstate Commerce Commission, or that it was guilty of any negligence, which, in whole or in part, was the proximate cause of the plaintiff's injuries; and also claims that plaintiff himself was guilty of negligence as a matter of law and that such negligence is the sole proximate cause of his injuries.

The Federal Employers' Liability Act provides that every common carrier by railroad, while engaged in interstate commerce, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, for such injury "resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (U. S. Code, title 45, chap. 2, par. 51.) The basis of liability under the act is negligence on the part of the railroad. The act, as it now stands as above quoted, leaves for practical purposes, in determining the liability of the carrier, only the question whether the carrier was negligent and whether that negligence was the proximate cause of the injury. (*Tiller* v. *Atlantic Coast Line Railroad Co.* 318 U. S. 54, 63 S. Ct. 444.) Section 3 of the act, providing that no employee who may be injured or killed shall be held guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death, (U. S. Code, title 45, chap. 2, par. 53,) and section 4, providing that no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee, (U. S. Code, title 45, chap. 2, par. 54,) recognize that rights of action under the Federal Employers' Liability Act may arise out of violation of statutes enacted for the safety of employees. These

sections very clearly show the legislative intent to treat as negligence *per se* a violation of any statute enacted for the safety of employees where such negligence was the proximate cause of the injury. The Safety Appliance Act, designated also as the Safety Appliances and Equipment Act, (U. S. Code, title 45, chap. 1, pars. 1 to 16,) was passed to promote the safety of employees. It imposes upon the carrier an absolute and continuing duty to equip and maintain its cars in accordance with the standards of equipment prescribed by the act. (*Moore* v. *Chesapeake & Ohio Railway Co.* 291 U. S. 205, 54 S. Ct. 402.) It also requires the Interstate Commerce Commission to designate the number, dimensions, location and manner of application of the safety appliances provided for by the act, and directs that these designations shall remain as the standards of equipment to be used on all cars unless changed by an order of said commission. (U. S. Code, title 45, chap. 1, par. 12.) The rules adopted by the Interstate Commerce Commission in the exercise of its authority to set standards of equipment are an integral part of the act and have the force of the statute. (*Atchison, Topeka & Santa Fe Railway Co.* v. *Scarlett,* 300 U. S. 471, 57 S. Ct. 541.) Any employee engaged in interstate commerce, who is injured by a violation of the Safety Appliance Act, may bring his action under the Federal Employers' Liability Act, charging the violation of the Safety Appliance Act. (*Moore* v. *Chesapeake & Ohio Railway Co.* 291 U. S. 205, 54 S. Ct. 402; *San Antonio & Arkansas Pass Railway Co.* v. *Wagner,* 241 U. S. 476, 36 S. Ct. 626.) And, a violation of any rule enacted by the Interstate Commerce Commission, in pursuance of its authority under the Safety Appliance Act, amounts to a violation of the act. (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Scarlett,* 300 U. S. 471, 57 S. Ct. 541.) As an interstate common carrier, a railroad company is liable for injuries to its employees resulting from a violation of its absolute duty to comply with the Safety Appliance

Act, and is not excused by any showing of care, however assiduous. *Myers* v. *Reading Co.* 331 U. S. 477, 67 S. Ct. 1334; *Brady* v. *Terminal Railroad Association,* 303 U. S. 10, 58 S. Ct. 426.

The Safety Appliance Act provides that all cars requiring secure running boards shall be equipped with such running boards, and makes it unlawful to use cars not so equipped. (U. S. Code, title 45, chap. 1, par. 11.) The rules of the Interstate Commerce Commission require all boxcars to be equipped with running boards, but make no such requirement for any gondola car. The rules prescribe the standards of safety appliance equipment to be used on boxcars, house cars, hopper cars, high-side gondola cars with fixed ends, drop-end high-side gondola cars, fixed-end low-side gondola cars, low-side hopper cars, drop-end low-side gondola cars, flatcars, tank cars and caboose cars. There is also a rule of the Interstate Commerce Commission which provides that cars of special construction not covered specifically by the rules of the commission relative to handholds, sill steps, ladders, hand brakes and running boards may be considered as of special construction, but shall have, as nearly as possible, the same complement of handholds, sill steps, ladders, hand brakes, and running boards as are required for cars of the nearest approximate type.

One L. W. Dobbins, an employee of defendant, testified that he was familiar with the rules, regulations, directions, designations and requirements of the Interstate Commerce Commission having to do with the equipment of railroad cars in respect to the use and installation of running boards on freight cars, and testified that boxcars are required by Interstate Commerce Commission rules to be equipped with running boards running longitudinally the length of the car, but that there had never been issued at any time by the Interstate Commerce Commission or any authorized official thereof, any rule, regulation, direction, designation or requirement, requiring running boards on "so-called open-top

or roofless boxcars." He testified that the particular car 291872 was just like an ordinary boxcar with the exception there was no roof on it and that it was delivered to the defendant as a boxcar with the roof and running board on it. He further testified that defendant had several types of gondola cars and that the sides of gondola cars are not as high as car 291872; that defendant had in use gondola cars, some of a low type and some of a high type.

It is urged by defendant that when a car is changed from one type to another, then under the rules of the Interstate Commerce Commission the safety appliance of the new type which the reconstructed car most nearly approximates must be applied, and that in this case when the roof and running board were removed from car 291872, it was thereby converted from a boxcar into a gondola and as such was not required to be equipped with a running board. We are of the opinion it cannot be said as a matter of law that a boxcar from which the running board and roof have been removed is a gondola car, or, as a matter of law upon the record in this case, that car 291872, which was admittedly a boxcar prior to the removal of its roof and running board, was, by the removal of such roof and running board, reconstructed and changed from a boxcar to a gondola or to a car of special construction which more nearly approximated a gondola car than it did a boxcar. It would seem this is a question of fact to be decided by the jury upon the evidence in the record as to the two types of cars, box and gondolas, the description of same, and the various points of similarity to and difference of each of them from car 291872, in the condition it was at the time of the accident.

We are further of the opinion, apart from the question of any statutory violation on the part of the defendant, upon an examination of the record, that the trial court properly refused to withdraw from the jury the question whether defendant was negligent in its duty to furnish the

plaintiff with a reasonably safe place to work. It is undisputed in this case that the car in question was, in external appearance, exactly the same as a boxcar, except that it had no roof and running board, that there was no notice or warning or mark of any kind upon the car calling attention to this fact, that when plaintiff made his inspection of the cars in the train, as he walked along on the ground on the west side of the train with his back to the flood lights, he observed that the last five cars, next to the caboose, were all boxcars, and saw nothing to indicate that the roof or running board had been removed from any of them, and when he went to the top of the train to release the brakes on these five cars, he was of the opinion these cars were all equipped with running boards which would afford him a safe and uninterrupted path over the top of the five cars.

Plaintiff's testimony was uncontradicted that it was dark and the weather cloudy on that morning, that the flood lights thrown in his face were blinding and that when he was on the car south of car 291872, and using his lantern to find out about that car, he could see the south end of it and see that the end was curved at the top and a foot or 18 inches below him and that the brake was not at that end, but that he could not tell that the car had an open top. No witness was called by the defendant to testify that the absence of a roof from the car in question was, as defendant contends, manifestly visible, or to contradict plaintiff's testimony as to what could be seen of the car on the morning of the accident when standing on the north end of the car immediately south of it. In addition, the evidence relating to defendant's custom of stenciling upon its roofless boxcars a warning that the same were open-top would reasonably warrant an inference that plaintiff was entitled to assume and rely upon the assumption that all box cars from which the roof and running board were removed would be marked with a notice of that fact.

The claim is made that the roofless condition of car 291872 was so apparent and obvious to plaintiff's view at the time of the accident that defendant should be relieved of liability. Aside from the fact that the evidence does not disclose such apparent view under the circumstances as shown in this case, such claim suggests what would be analogous to a defense of contributory negligence and that of assumed risk, both of which were a bar at common law to the action of a servant against his master for personal injuries. However, under the Federal Employers' Liability Act, contributory negligence has never been a defense except as to diminution of damages, and the amendment of 1939 to that statute has removed from the law the doctrine of assumed risk. *Tiller* v. *Atlantic Coast Line Railroad Co.* 318 U. S. 54, 63 S. Ct. 444.

The defendant in the instant case argues that plaintiff knew that roofless boxcars were used by it and that if he had exercised ordinary care he would have seen the dangerous open top of the boxcar in question in time to have avoided the accident, without the benefit of the usual warning on the car. Plaintiff testified he knew of defendant's use of these open-top boxcars; that he had come across them in his work, but not regularly; that he would have one and then not have another for three or four months. The record discloses that it was defendant's usual practice to stencil upon such cars a warning that the roof had been removed, and there was no evidence that plaintiff had ever seen a roofless boxcar that did not have the usual warning on it. In this state of the record, it would not have been unreasonable for the jury to have inferred that the notice upon the car was the thing he expected and had a right to expect to warn him of the danger of an open-top boxcar on those infrequent occasions when such a car was included in the train upon which he was required to work. A finding that plaintiff would not have been injured but for the

failure to warn him is therefore not without support in the evidence. The jury might well have believed that a warning on the side of car 291872 would have prevented the accident.

In actions under the Federal Employers' Liability Act the rule for measuring the sufficiency and amount of evidence necessary to justify the submission of the case to the jury is that established by the Supreme Court of the United States, (*Ellis* v. *Union Pacific Railroad Co.* 329 U. S. 649, 67 S. Ct. 598; *Brady* v. *Southern Railway Co.* 320 U. S. 476, 64 S. Ct. 232,) and it is clear from its recent decisions that the authority of courts to withdraw from the consideration of a jury the question of a defendant railroad company's negligence and its proximate relation to the injury is now very restricted indeed. *Tiller* v. *Atlantic Coast Line Railroad Co.* 318 U. S. 54, 63 S. Ct. 444; *Bailey* v. *Central Vermont Railroad Co.* 319 U. S. 350, 63 S. Ct. 1062; *Tennant* v. *Peoria & Pekin Union Railroad Co.* 321 U. S. 29, 64 S. Ct. 409; *Lavender* v. *Kurn,* 327 U. S. 645, 66 S. Ct. 740; *Jesionowski* v. *Boston & Maine Railroad Co.* 329 U. S. 452, 67 S. Ct. 401; *Ellis* v. *Union Pacific Railroad Co.* 329 U. S. 649, 67 S. Ct. 598; *Tiller* v. *Atlantic Coast Line Railroad Co.* 323 U. S. 574, 65 S. Ct. 421.

In the *Tennant case,* above cited, a verdict and judgment for the death of an employee, where there were no eyewitnesses to the occurrence, had been recovered in the trial court and reversed by the United States Circuit Court of Appeals on the ground that there was no substantial proof that the negligence of defendant was the proximate cause of the employee's death. This judgment of the Circuit Court of Appeals was reversed by the Supreme Court of the United States, and in its opinion in that case, the Supreme Court, after first pointing out that the plaintiff was required to present probative facts from which the negligence and the causal relation could be reasonably inferred,

went on to say: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusions as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. [Citations.] That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." In the *Ellis case,* the Supreme Court of the United States, said: "The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury. [Citations.] Once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair-minded men might reach a different conclusion. For then it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable."

The right to trial by jury is a part and parcel of the remedy afforded railroad workers under the Federal Employers' Liability Act. ·(*Bailey* v. *Central Vermont Railway Co.* 319 U. S. 350, 63 S. Ct. 1062.) To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which

Congress has afforded them. *Blair* v. *Baltimore & Ohio Railroad Co.* 323 U. S. 600, 65 S. Ct. 545; *Bailey* v. *Central Vermont Railway Co.* 319 U. S. 350, 63 S. Ct. 1062.

From a careful analysis of the evidence considered in this case in connection with the rules and principles as announced under the Federal Employers' Liability Act, and the decisions pertaining thereto, we are of the opinion it cannot be said as a matter of law, that the verdict of the jury is without support in the evidence. We are not intimating in any way how the court should decide the factual matters in this record other than to say the Appellate Court should apply the facts to each charge of negligence under the rules as we have above pointed out, and make its determination accordingly.

The judgment, therefore, of the Appellate Court is reversed and the cause remanded to that court, with directions to consider the assignment of errors other than the one decided, and to either affirm the judgment of the trial court, or reverse it and remand the cause for a new trial.

*Reversed and remanded, with directions.*