**Robert D. JORDAN, Plaintiff–Appellee,**

v.

**SOUTHERN RAILWAY COMPANY, Defendant–Appellant.**

No. 91–2252.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1992.

Decided July 28, 1992.

---

Henry Dargan McMaster, Columbia, S.C., argued (John Gregg McMaster, on brief), for defendant-appellant.

Blake George Arata, Jr., Davis & Saunders, P.L.C., Metairie, La., argued (Benjamin B. Saunders, C. Perrin Rome, III, Metairie, La., Austin J. Tothacer, Pinopolis, S.C., on brief), for plaintiff-appellee.

Before HALL and LUTTIG, Circuit Judges, and KELLAM, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Southern Railway Company (Railroad) appeals the district court's denial of its motion for partial summary judgment in this action under the Federal Employers' Liability Act (FELA). The district court certified a question for interlocutory appeal: "Is the door and ratchet mechanism of a railroad ballast car a safety appliance within the terms of the Safety Appliance Act, 45 U.S.C. Sections 1–16, *et seq.*?" Because we conclude that the mechanism at issue is not a "safety appliance," we reverse and remand.

### I.

On January 12, 1990, appellee Robert Jordan was injured on the job while employed by appellant Railroad. Jordan was working as a trackman and was trying to unload a ballast car. Ballast cars carry many tons of gravel, which is used to build up and maintain the trackbed. Workers

use a pipe-and-ratchet mechanism (similar to an automobile jack) to open doors along the sides of the ballast cars. As the cars move, the gravel falls slowly along the tracks, where the workers spread it evenly.

Jordan tried to open a door with the ratchet, but it would not budge. He applied more and more of his body weight to the pipe, and the door opened suddenly. Jordan was knocked to the ground and sustained a back injury, which required surgery and has prevented him from working since.

■ Jordan filed this suit under FELA, 45 U.S.C. § 51, *et seq.* FELA is not a no-fault worker's compensation statute; the injured worker must prove some act of negligence on the part of the employer. However, where the injury results from malfunction of equipment required by the Safety Appliance Act, 45 U.S.C. §§ 1–16 (the Act), liability is strict. *Affolder v. New York, C. & St. L. R. Co.*, 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950); *O'Donnell v. Elgin, Joliet & Eastern R. Co.*, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949). In his complaint, Jordan alleged that the ratchet mechanism on the ballast car door is a "safety appliance." The Railroad moved for partial summary judgment, arguing that the ratchet was not a "safety appliance" as a matter of law. The district court denied the motion, but certified the issue for interlocutory appeal under 28 U.S.C. § 1292. This court then granted leave to bring the appeal. Because whether a particular device is a "safety appliance" is a question of law, our review is de novo.

## II.

The Act dates from the heyday of American steam railroads. It became law in 1893, and the provisions pertinent to this case were added in 1910. "Safety appliance" is a popular name given to the statute and the equipment it treats; however, the statute nowhere defines a generic class of "safety appliances." Instead, the statute contains a strikingly specific laundry list of equipment a railroad must have on each type of car: ladders, brakes, automat-

ic couplers, hand holds, running boards, etc. 45 U.S.C. § 11. In addition, the statute gives the Secretary of Transportation (formerly the Interstate Commerce Commission) the power to prescribe standards for the various listed appliances. 45 U.S.C. § 12. The current regulations, at 49 C.F.R. Parts 231–233, standardize, in great detail, each item on Congress' laundry list. The rub in this case is that the ratchet used to open a door on a ballast car is not mentioned anywhere in the statute or regulations. Jordan maintains that it is nonetheless a "safety appliance."

■ For our purposes, the key sections of the statute are 45 U.S.C. §§ 11 and 12. Section 11 states:

It shall be unlawful for any railroad ... to haul, or permit to be hauled or used on its line, any car subject to [§§ 11–16] not equipped *with the appliances provided for in said sections, to wit:* All cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure handholds or grab irons on their roofs at the tops of such ladders: Provided, That in the loading and hauling of long commodities, requiring more than one car, the hand brakes may be omitted on all save one of the cars while they are thus combined for such purpose.

In pertinent part, § 12 provides:

The number, dimensions, location, and manner of application of the appliances provided for by [45 U.S.C. §§ 4–11] as designated by the Secretary of Transportation shall remain as the standards of equipment to be used on all cars subject to [§§ 11–16], unless changed by an order of said Secretary of Transportation to be made after full hearing and for good cause shown;....

From just the statutory language, especially the phrase we have emphasized in § 11, we would think it clear that the Safety Appliance Act creates strict liability for

malfunctions in specific equipment, and no other device, however necessary for safety, falls within its reach. An employee injured by any non-specified appliance would have to prove negligence on the part of the railroad under the general FELA standard.

The sparse case law somewhat muddles the matter, though. The Supreme Court last addressed this issue thirty-six years ago in an opinion upon which both parties rely. *Shields v. Atlantic Coast Line Railroad Co.*, 350 U.S. 318, 76 S.Ct. 386, 100 L.Ed. 364 (1956). In addition, the railroad relies on a 1970 Texas state case, in which the scope of the Act was limited to the specified § 11 devices. *Hercules, Inc. v. Eilers*, 458 S.W.2d 221 (Tex.Ct.Civ.App. 1970), *cert. denied*, 403 U.S. 937, 91 S.Ct. 2251, 29 L.Ed.2d 717 (1971).

In *Shields*, a worker was injured when a running board on top of the dome of a tank car collapsed. The railroad argued first that the "running board" was not a "running board" within the meaning of the Act, but rather a "platform." In the alternative, the railroad argued that because the regulations did not require running boards on tank car domes, the Act was inapplicable. A five-justice majority of the Court disagreed with the railroad on both counts.

The Court noted that "railroad men" commonly referred to the device at issue as a "running board," and that all "running boards" came within § 11, whether the regulations standardized the particular type of running board or not.

> The purpose of [§ 12] is to standardize the appliances required by [§ 11]. But it does not follow that appliances necessary and furnished for the safe use of the car, although not standardized under [§ 12], are not within the sweep of [§ 11].

350 U.S. at 323, 76 S.Ct. at 390. The Court's opinion could have stopped there. However, it went on, and produced grist for the parties' arguments in this case. For example:

> We conclude that failure of the Commission to standardize the dome running board need not mean that it was not a required running board under [§ 11]. To

hold otherwise would relieve railroads from the absolute duty under [§ 11] to make safety appliances secure whenever new appliances are adopted which have not yet been standardized by the Commission.

\* \* \* \* \* \*

> Petitioner used the dome running board, not simply because it happened to be there, but also because it had to be there for him to perform his duties safely, and performance of his duties was essential to the operation of the tank car. At best, appliances standardized in Commission regulations represent the minimum of safety equipment, and there is no prohibition of additional safety appliances. If a dome running board is provided by the railroad or the makers of the car and used by the railroad as an appliance necessary for the use of the car, it must be a safe board as required by [§ 11].

*Id.* at 323–324, 76 S.Ct. at 390–391.

Jordan argues that the ballast car ratchet is necessary to operate the ballast car, and it is designed to make that job safe; therefore, he concludes, it is a "safety appliance." Jordan's reading of *Shields* is so broad that the Safety Appliance Act would swallow FELA. Railroads have a general duty under FELA to provide their employees with a reasonably safe workplace, including safe tools and equipment, to perform the assigned tasks. *Bailey v. Central Vermont Railway*, 319 U.S. 350, 352–353, 63 S.Ct. 1062, 1063–1064, 87 L.Ed. 1444 (1943). If the railroad fails to furnish reasonably safe equipment, which in turn causes an injury in a manner foreseeable [1] to the railroad, the worker may recover under the FELA negligence standard. However, if the railroad discharges its duty of care, and provides safe equipment, Jordan would then turn the equipment into an appliance necessary for safe use of the car, and hence a "safety appliance." In other words, if the device is not safely designed, the railroad is negligent; if it is safely designed, the railroad is strictly liable for

---

1. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).

its malfunction. Heads I win, tails you lose.

 We think that the only way to understand *Shields*, especially in light of the specific language of the statute, is that the categories of safety appliances created by § 11 (e.g. running boards) should be broadly read to include every device falling within that category, even if the Secretary of Transportation has not seen fit to standardize a particular type or use of that device. *Hercules*, the Texas case relied on by the Railroad, interpreted *Shields* that way.

Moreover, though the parties' briefs would suggest otherwise, *Shields* did not paint on an empty canvas. Soon after the Act was passed, but before the ICC had promulgated uniform standards for ladders and hand holds, the Court decided two cases brought by workmen who had been injured after hand holds on boxcars failed. In both instances, the Court ruled that § 11's requirement that ladders and hand holds be "secure" was operative notwithstanding the ICC's delay in implementing uniform standards under § 12. *Illinois Central R.R. Co. v. Williams*, 242 U.S. 462, 37 S.Ct. 128, 61 L.Ed. 437 (1917); *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916).

Just a few years later, the Court illustrated the opposite side of the coin. In *Davis v. Manry*, 266 U.S. 401, 45 S.Ct. 163, 69 L.Ed. 350 (1925), the worker had been injured when he fell from a locomotive tender. The worker contended that his injury could have been prevented had there been a grab iron along the top of the tender. The Court examined the § 11 statutory language, which requires grab irons on "roofs" of "cars," and concluded that the statute did not of itself require grab irons on the roofless locomotive tender. In addition, the Court looked to the § 12 regulations (by then in place) and noted that the ICC had not required grab irons on tenders either. Though the Court did not deem the regulations conclusive of its § 11 analysis,

it found them "persuasive" support for its construction of that section.

Finally, in *Atchison, T & S.F. Ry. Co. v. Scarlett*, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748 (1937), a worker was injured in a fall when he used the projecting edge of a "brace rod" (part of the supporting structure of the car) as an extra step of the nearby ladder. The Court held that the railroad was not strictly liable under the Act because the ladder itself fully complied with the regulations and had not malfunctioned. The brace rod was not part of the ladder,[2] and any claim that the proximity of the rod to the ladder caused the injury should be evaluated under a negligence standard.

> [T]he railway company having strictly complied with the regulation has discharged its full duty so far as the ladder requirement of the Safety Appliance Act is concerned.

*Scarlett*, 300 U.S. at 474, 57 S.Ct. at 543.

We think that the teaching of these cases is that it is not necessarily dispositive of a Safety Appliance Act claim that the malfunctioning device is not specifically prescribed in the § 12 regulations. However, the absence of a device from § 11 is fatal. In the context of these earlier cases, *Shields* is easily understood as a simple application of a longstanding principle.

 The ratchet mechanism is not prescribed by § 12 regulations and bears no resemblance to any of § 11's appliances; hence, we hold that the railroad is not strictly liable under the Act for its malfunction.

### III.

Finally, as a practical matter, the central function of every device identified in the Act is safety: hand holds, running boards, hand brakes, automatic couplers. It is possible to operate a railroad without these devices, which is undoubtedly why Congress mandated their use in the first place. A device with safety as its primary func-

---

**2.** Compare *Southern Pac. Co. v. Carson*, 169 F.2d 734, 737–738 (9th Cir.1948) (wooden club necessary to turn hand brake that otherwise complied with regulations was a part of the brake, because it was necessary to make the brake "efficient" under § 11).

tion is qualitatively different than a safely-designed device with an operational function. The purpose of the ratchet mechanism involved here is to open a door. There are surely more hazardous ways to open the door, but that fact does not transform the ratchet into a "safety appliance."

The denial of partial summary judgment is reversed, and the case is remanded for disposition under the negligence standard of FELA.

REVERSED AND REMANDED.