Ethel and Don MARTIN, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Bob BERGLAND, Secretary of Agriculture, Defendant-Appellee.

No. 79–1571.

United States Court of Appeals, Tenth Circuit.

Argued July 7, 1980.

Decided Jan. 19, 1981.

Michael J. Friesen, Garden City, Kan., for plaintiffs-appellants.

Freddi Lipstein, Washington, D. C. (Alice Daniel, Asst. Atty. Gen. and Robert S. Greenspan, Atty., Civ. Div., Dept. of Justice, Washington, D. C., James P. Buchele, U. S. Atty., D. Kansas, Topeka, Kan., of counsel, with her on brief), for defendant-appellee.

Before SETH, Chief Judge, and McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

This is an appeal from a district court's refusal to declare unconstitutional a regulation, 7 C.F.R. § 795.11, promulgated by the Secretary of Agriculture (Secretary) pursuant to the Agricultural Adjustment Act of 1938. The challenged regulation is part of Congress' elaborate attempt to avoid surpluses and shortages in farm products.[1] Appellants claim that the regulation is unconstitutional because it does not accord them equal protection, because it denies them due process, and because it results in a forfeiture of their contractual rights.

Congress has directed the Secretary to determine annually the amount of planted acreage needed to satisfy normal as well as potential emergency domestic demands for crops.[2] Farmers participating in programs designed to implement the Secretary's determinations are entitled to payments based on a formula established in 7 U.S.C. § 1445a. Following implementation of the Secretary's determinations early in the policy's history, public protest denounced large payments received by individual farmers who kept their farms idle.[3] In response to this outcry, Congress in 1970 enacted a payment limitation of $55,000 per person.[4] In 1973, the limit was reduced to its present level of $20,000 per "person."[5]

In connection with these limitations, Congress directed the Secretary to define the term "person."[6] Accordingly, in 7 C.F.R. § 795.3 the Secretary specifies the generally applicable conditions in accordance with which an entity will be deemed a "person" for purposes of the payment limitation. Section 795.3 reads:

> Subject to the provisions of this part, the term "person" shall mean an individual, joint stock company, corporation, association, trust, estate, or other legal entity. In order to be considered a separate person for the purpose of the payment limitation, in addition to the other conditions of this part, the individual or other legal entity must:
>
> (a) Have a separate and distinct interest in the land or the crop involved,
>
> (b) Exercise separate responsibility for such interest, and
>
> (c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

As the district court noted, these generally applicable conditions define "person" on the basis of the farmer's relationship to his land.[7] Sections 795.5–.16, on the other hand, define "person" solely with reference to one entity's relationship to another: if the specified relationship exists—be it between a corporation and a stockholder (§ 795.8), an estate or trust (§ 795.9), or a minor child and his guardian or parents (§ 795.12)—multiple entities are deemed to be a single person, even though they might otherwise qualify under the generally applicable conditions for consideration as multiple persons.[8] Similarly, § 795.11 states

---

1. *See generally* Agricultural Adjustment Act of 1938, 7 U.S.C. §§ 1281–1393, §§ 1421–1449. "The conditions affecting the production of wheat are such that without Federal assistance, producers cannot effectively prevent disastrously low prices for wheat...." *Id.* § 1379a.

2. For the 1977–81 program designed to implement the Secretary's determinations as to the demands for wheat, see 7 U.S.C. § 1445b(f)(1).

3. Illustrative of this public protest, Congressman Madden declared, "I am against these farmers who receive payments, these annual six-figure checks for idle land," and elaborated, "Four large farm operations in Arizona and California received over $1 million a year for idle land. Thousands receive annual bonanzas in six figures." 116 Cong.Rec. 27130 (1970).

4. Agriculture Act of 1970, Pub.L. No. 91–524, 84 Stat. 1358.

5. Agriculture and Consumer Protection Act of 1973, Pub.L. No. 93–86, 87 Stat. 221.

6. "The Secretary shall issue regulations defining the term "person" and prescribing such rules as he determines necessary to assure a fair and reasonable application of such limitation ...." 7 U.S.C. § 1307(4).

7. Record, vol. 1, at 191.

8. Indeed, § 795.6 states, "In cases in which more than one rule would appear to be applicable, the rule which is *most restrictive* on the number of persons shall apply." (Emphasis added).

without any further qualification that "[a] husband and wife shall be considered as one person."

Appellants are a married couple. Before their marriage they maintained totally separate farms located in different counties. The Secretary admits that after their marriage they have maintained their respective farms separately. The Secretary also admits that but for § 795.11's husband-wife rule, their accumulative entitlements would exceed the $20,000 limitation. The sole question on appeal is whether we must strike down the husband-wife rule on the basis of one or all of plaintiff's constitutional theories.

### I. Equal Protection Claim

Appellants' primary argument is that the husband-wife rule infringes on their right to the equal protection of the laws under the Fifth Amendment. *See Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976); *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). Plaintiffs assert that since § 795.3 adequately prevents evasion of the intent of the payment limitation, the Secretary's refusal, solely because of their marriage relationship, to treat their respective farms separately denies them equal protection.

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 307 (1976). *See generally San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 13 (1973). While conceding that the class of married persons does not constitute a suspect class for purposes of equal protection analysis, appellants urge that the husband-wife rule impermissibly interferes with the exercise of their fundamental right to marry. *See Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct.

673, 54 L.Ed.2d 618 (1978); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

■ In *Zablocki,* the Supreme Court strictly scrutinized a Wisconsin statute which required one to obtain a court's permission before he could marry if he was under an obligation to pay child support. The statute was overturned, but the Court carefully limited its holding:

> By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.

*Zablocki v. Redhail,* 434 U.S. at 386, 98 S.Ct. at 681. As illustrative of this limitation, the Court cited *Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977). In *Jobst,* the Court was faced with an equal protection challenge to the Social Security Act proviso that a dependent child's social security benefits terminate upon marriage to a person not entitled to benefits under the Act even though the child's spouse is permanently disabled. The Court agreed that the proviso "may make some suitors less welcome than others," *Id.* at 58, 98 S.Ct. at 101, but declined to apply the strict scrutiny test. "The directness and substantiality of the interference with the freedom to marry distinguish [*Zablocki*] from *Califano v. Jobst.*" *Zablocki v. Redhail,* 434 U.S. at 387 n.12, 98 S.Ct. at 681 n.12. While the dollar amounts in the instant case may be greater than the amounts in *Jobst,* the husband-wife rule well may be less of a burden on the decision to marry than a proviso implicating survival sums as in *Jobst.*[9] Section 795.11 is not such a direct and substantial burden on appellants' freedom to marry that it should be strictly scrutinized.

---

**9.** We find appellants' attempts to distinguish their case from *Jobst* on grounds that a regulation and not a statute is involved here, and that

this regulation affects appellants' "contract" with the government unpersuasive for the reasons given in note 12, *infra.*

Since the strict scrutiny test is inapplicable, appellants bear the substantial burden of showing that there is no rational basis for the proviso of § 795.11.[10] The extreme deference generally given to legislation under the rational basis test suggests that it takes no special talent to come up with a rational basis for *any* scheme; the difficult task is to formulate a plan for which there is no rational basis. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 307 (1976) (stating that the rational basis test "employs a relatively relaxed standard ...."); *Younger v. Colorado State Board of Law Examiners*, 625 F.2d 372, 377 (10th Cir. 1980) (noting that "under equal protection standards ... classifications drawn will be set aside only if based on reasons totally unrelated to a legitimate state end, and if no grounds can be conceived to justify them"). We do not think, however, that our very choice of a standard determines the outcome of an equal protection argument, for we note that some plaintiffs have succeeded under the rational basis test in overcoming the presumption of validity generally accorded government action. *See Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *United States v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). Further, some Supreme Court cases have intimated that a court must not be content merely to contrive some rational basis for a challenged classification: "To be sure, the standard by which legislation such as this must be judged 'is not a toothless one.' " *Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976) (quoting *Mathews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976)).[11]

With these standards in mind, we find that the husband-wife rule does rationally further Congress' interest in limiting farm subsidy payments to $20,000 per "person." Payment per married couple or economic entity advances Congress' policy to defuse the public's reaction to very large payments to some farmers and farm households for idle land. Appellants do not deny that as husband and wife, they are to some extent financially interdependent, if only in that a financial benefit to one is a benefit to both. This is precisely the reason that the Supreme Court quite recently has noted that "[b]oth tradition and common experience support the conclusion that marriage is an event which normally marks an important change in economic status." *Califano*

10. " 'The basic principle that must govern an assessment of any constitutional challenge to a law providing for governmental payments of monetary benefits is well established .... "If the classification has some 'reasonable basis,' it does not offend the Constitution ...." ' " *Califano v. Aznavorian*, 439 U.S. 170, 174–75, 99 S.Ct. 471, 473–474, 58 L.Ed.2d 435 (1978) (quoting *Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976)) (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 479 (1970)) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911))."

11. Appellants would have us adopt Professor Gunther's "middle tier" of equal protection analysis—the so-called "newer equal protection," or rationality review "with bite." Gunther, *The Supreme Court, 1971 Term—Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv.L.Rev. 1 (1972). This middle tier, however, which "would have the Court assess the means in terms of legislative purposes that have substantial basis in actuality, not merely in conjecture," *id.* at 21, has not been expressly adopted by the Supreme Court. Nonetheless, in *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973), the Court did indicate that a court should "inquire ... whether the challenged distinction rationally furthers some legitimate, *articulated* state purpose." (Emphasis added). *Accord, Younger v. Colorado State Bd. of Law Examiners*, 625 F.2d 372, 377 (10th Cir. 1980); *cf. Schlesinger v. Ballard*, 419 U.S. 498, 520, 95 S.Ct. 572, 583, 39 L.Ed.2d 465 (1975) (Brennan, J., dissenting) ("we have recently declined to manufacture justifications in order to save an apparently invalid statutory classification"). In *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), however, the Court appears to have retrenched into an extremely deferential application of the rational basis test. "In an equal protection case ..., those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based *could not reasonably be conceived* to be true by the governmental decisionmaker." *Id.* at 111, 99 S.Ct. at 950 (emphasis added).

*v. Jobst*, 434 U.S. at 53, 98 S.Ct. at 99. This is not insubstantial rhetoric; appellants cannot deny—however separately their respective farms may be administered—that each benefits from the prosperity of the other. Such economic interdependency forms a rational basis for the Secretary's conclusion that married couples are a single economic unit entitled to a single farm support payment.

## II. Due Process Claim

■ Appellants next object to § 795.11 insofar as it conclusively presumes them to be a single producer despite their factual showing of separateness. This presumption, plaintiffs argue, violates their due process rights under the analysis of the Supreme Court's irrebuttable presumption cases. *See, e. g., Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 97 S.Ct. 791, 39 L.Ed.2d 52 (1974); *United States v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

Appellants' claim is not a proper case for the application of the irrebuttable presumption doctrine. In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court declined to apply the irrebuttable presumption doctrine

to a state compensation statute's presumption of disability based on clinical evidence of complicated pneumoconiosis. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975) (setting aside a lower court decision which had applied the irrebuttable presumption doctrine to invalidate a Social Security eligibility requirement). Appellants have not persuaded us that *Usery* and *Salfi* are not dispositive of their due process claim.[12]

Even if the irrebuttable presumption doctrine were alive and applicable to this type of case, appellants' due process claim would be rejected because appellants misstate the substance of what the husband-wife rule presumes. This rule does not presume merely that the farming interests of a husband and wife employ the same administrative machinery; it also is intended to ensure that no more than $20,000 is paid to one economically interdependent unit. Because appellants do not challenge this latter presumption, their appeal to the irrebuttable presumption doctrine is misplaced and must fail.[13]

## III. Contract Claim

■ Finally, appellants contend that § 795.11 constitutes an unconstitutional and inequitable forfeiture of their contractual

**12.** Appellants' argument that their claim is contractual and therefore is not harmed by *Salfi*'s blow to the doctrine of irrebuttable presumptions is not persuasive. Assuming without deciding that the district court erred in declining to treat appellants' claim to government payments "as more 'contractual' in nature than a claim, as in *Salfi*, for social security benefits made after a worker has made contributions throughout years of employment," Record, vol. 1, at 198, there is no authority for appellants' assertion that *Salfi*, by negative implication, validates the application of the irrebuttable presumption doctrine in contract cases. For purposes of this case, we read *Usery* and *Salfi* as an indication that that doctrine is moribund.

Appellants' contention that they escape *Usery*'s rule because they assert the unconstitutionality of an *administrative* rather than a *legislative* act is unpersuasive. Appellants again place undue and unsupported weight on a negative implication of the Court's language. Because the Secretary promulgated 7 C.F.R. § 795.11 pursuant to Congress' command in 7 U.S.C. § 1307(4), it is legislative in nature and has "the full force of law and [is] binding on a court subject only to review under an arbitrary

and capricious standard." *Joseph v. United States Civil Serv. Comm'n*, 554 F.2d 1140, 1154 n.26 (D.C.Cir.1977). *See also Paul v. United States*, 371 U.S. 245, 255, 83 S.Ct. 426, 433, 9 L.Ed.2d 292 (1963); *Alabama Pub. Serv. Comm'n v. Southern Ry.*, 341 U.S. 341, 343 n.3, 71 S.Ct. 762, 765 n.3, 95 L.Ed. 1002 (1951); *Atchison, T. & S.F. Ry. v. Scarlett*, 300 U.S. 471, 474, 57 S.Ct. 541, 543, 81 L.Ed. 748 (1937).

**13.** Even if, as appellants content, Congress intended that the policies of § 795.3 be considered "primary" with respect to § 795.11 and that the unit-of-benefit aspect of the rule secondary, appellants' cause is not furthered. "Permitting nullification of statutory classifications based rationally on a nonprimary legislative purpose would allow courts to peruse legislative proceedings for subtle emphases supporting subjective impressions and preferences. The Equal Protection Clause does not countenance such speculative probing into the purposes of a coordinate branch." *McGinnis v. Royster*, 410 U.S. 263, 277, 93 S.Ct. 1055, 1063, 35 L.Ed.2d 282 (1973).

rights because, as part of the government's agreement with participating farmers, it was not brought to the attention of such farmers, including appellants, and therefore operated as an adhesion clause rendering the agreement unconscionable. Even assuming that appellants' decision to participate in the farm payments program gave rise to a contract,[14] we hold that § 795.11 is neither an unconscionable contractual provision nor unconstitutional. "It is too late in the day to urge that the Government is just another private litigant . . . . Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 383–85, 68 S.Ct. 1, 2–3, 92 L.Ed. 10 (1947). *See also Jackson v. United States*, 573 F.2d 1189, 1194 (Ct.Cl.1978) (ruling "The law in effect when a Government contract is made becomes a part of the contract"); 44 U.S.C. § 1507.

AFFIRMED.

---

**14.** *See generally* note 12, *supra.*