**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD A. JOHNSON; IDA
JOHNSON; JOHN AND JANE DOES
1-100,

     Plaintiffs-Appellants,

v.

CYNTHIA A. POMEROY, Director,
Wyoming Department of Employment;
GARY W. CHILD, Administrator,
Wyoming Workers' Safety and
Compensation Division; PEGGY
ELGIN, Assistant Administrator,
Wyoming Workers' Safety and
Compensation Division; KELLI
SMITH, Claims Manager, Wyoming
Workers' Safety and Compensation
Division; BARBARA BRAZZALE,
Claims Analyst, Wyoming Workers'
Safety and Compensation Division;
JOHN AND JANE DOES A-Z,

    Defendants-Appellees.

No. 07-8016
(District of Wyoming)
(D.C. No. 06-CV-194-J)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY** and **TYMKOVICH**, Circuit Judges, and **FRIZZELL**, District

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. 32.1 and 10th Cir.
R. 32.1.

Judge.**

---

The question presented in this appeal is whether the denial of extended workers' compensation disability benefits to Richard Johnson based on his spouse's income impermissibly interferes with the Johnsons' exercise of their constitutional rights to associate with one's family and to marry. The district court held that the consideration of spousal income has only an incidental burden on the Johnsons' marital relationship and did not constitute a violation of their constitutional rights. For the reasons set forth below, we AFFIRM.

## I. Allegations and Procedural Background

Appellants Richard and Ida Johnson were married on July 7, 1979. Complaint, Aplt. App. at 6. In 1981 and 1984, Mr. Johnson was injured while working as an oilfield roughneck. Id. As a result of those injuries, Mr. Johnson became permanently and totally disabled from performing any work for which he was reasonably suited by experience and training. Id.

In 1993, Mr. Johnson received an award of permanent total disability ("PTD") benefits under the Wyoming Workers' Compensation Act. Id. In each of the next few years, Mr. Johnson applied for and received extended PTD benefits. In 1997, however, the Wyoming Workers' Safety and Compensation

---

** Hon. Gregory K. Frizzell, United States District Judge for the Northern District of Oklahoma, sitting by designation.

Division denied his claim for extended benefits. Id. at 6-7. The Division advised Mr. Johnson that, because of his wife's income, he was no longer eligible for such benefits. Id. at 7. The Division relied upon Wyo. Stat. § 27-14-403(g)(i)(C), which provided that, in determining entitlement to benefits, the hearing examiner "shall consider income of the employee from all sources including active or passive income, household income and any monthly amount from any other governmental agency[.]" Id. In denying Mr. Johnson's claim, the Division considered Ida Johnson's earnings as "household income." Id.

Wyo. Stat. § 27-14-403(g)(i)(C) was enacted in 1986. The Johnsons allege that, from the time of the statute's enactment until 1997, the Division had not considered spousal income in determining entitlement to extended PTD benefits. Aplt. App. at 7-8. In August of 1997, the Division promulgated a proposed rule which would allow consideration of spousal income in determining entitlement to extended disability benefits. Id. After a public hearing on the proposed rule in October of 1997, and in response to public criticism, the Division retracted the proposed rule. Id. at 8. During the following legislative session in 1998, the Wyoming Legislature amended Wyo. Stat. § 27-14-403(g)(i)(C), to provide that household income is not to be considered in determining eligibility for extended benefits. The amended statute is silent as to its retroactive effect. However, the preamble to the session law in which the Wyoming Legislature adopted the changes specified the law's purpose as "clarifying which household income may

and may not be used in calculating extended benefits." 1998 Wyo. Sess. Laws, Ch. 117.

After a contested case hearing in 1998, Mr. Johnson was awarded retroactive extended PTD benefits. Id. He continued to receive extended PTD benefits until September 27, 2005, when the Division issued a final determination denying his claim on the basis that the Johnsons' combined household income exceeded their combined household expenses. Id. at 8-9. The primary reason for denying extended PTD benefits was the amount of income earned by Ida Johnson. Id. at 9.

Mr. Johnson objected to the September 2005 determination and requested a contested case hearing. Id. On July 3, 2006, the hearing officer entered Findings of Fact and Conclusions of Law denying Mr. Johnson's claim. Id. In the order, the hearing officer found that Mr. Johnson would have been entitled to an award of the maximum amount of extended PTD benefits if Ida Johnson's income had not been considered. Id. at 9-10. However, the hearing officer denied the claim because the law in effect in 1993 – when Mr. Johnson was first awarded PTD benefits –  allowed consideration of spousal income.[1]  Id. at 10.

_____

[1] Under Wyoming State Workers' Compensation law, "the substantive law in effect at the time of the injury governs the receipt of benefits." Ottema v. State ex rel., Wyoming Worker's Comp. Div., 968 P.2d 41, 44 (Wyo. 1998) (citing Wyo. Stat. § 27-14-602(b)). For purposes of determining claims for extended benefits, the injury is deemed to have occurred when the claimant was found to be permanently disabled. Id. at 44-45; see also In re Claim of Prasad, 11 P.3d 344, 346 (Wyo. 2000); Rodgers v. State ex rel., Worker's Comp. Div., 939 P.2d 246,

Mr. Johnson appealed the administrative denial of his claim for benefits to state district court. The Johnsons also brought a federal civil rights action, pursuant to 42 U.S.C. § 1983, in the United States District Court for the District of Wyoming, against Barbara Brazzale, Mr. Johnson's Claims Analyst in the Division, and Brazzale's supervisors (collectively the "Employees").[2] The Johnsons allege that the denial of extended PTD benefits to Mr. Johnson based on Ida Johnson's income infringes upon their constitutional rights to associate with one's family and to marry.

The Employees moved to dismiss the Johnsons' federal claims pursuant to Fed. R. Civ. P. 12(b)(l) and 12(b)(6), arguing that no fundamental constitutional rights have been violated. The Employees contend that their denial of workers' compensation benefits had, at best, an indirect burden on the exercise of the right to marry or associate with family, and did not impermissibly interfere with those fundamental rights.

249 (Wyo. 1997). The hearing officer concluded that the law in effect in 1993, when Wyoming determined that Johnson was permanently and totally disabled, governed his entitlement to benefits. The hearing officer noted Johnson's argument that the 1998 statutory amendment should be given retroactive effect.

[2] The named defendants include: (i) Cynthia Pomeroy, Director, Wyoming Department of Employment; (ii) Gary Child, Administrator, Wyoming Workers' Safety and Compensation Division; (iii) Peggy Elgin, Assistant Administrator, Wyoming Workers' Safety and Compensation Division; (iv) Kelli Smith, Claims Manager, Wyoming Workers' Safety and Compensation Division; and (v) Barbara Brazzale. Brazzale is alleged to have acted under the supervision and direction of Pomeroy, Child, Elgin and Smith.

The federal district court dismissed the Johnsons' claims, concluding that Wyoming's administrative regulations and corresponding determinations as to Mr. Johnson's entitlement to receive extended Workers' Compensation disability benefits did not constitute an impermissible interference with the Johnsons' fundamental constitutional rights.[3]

Shortly after the federal district court's decision, the state district court reversed the decision of the hearing officer in the workers' compensation case. The state district court held that the Wyoming statute in effect in 1993 did not permit consideration of spousal income in determining entitlement to permanent disability benefits. On June 2, 2008, following oral argument on this appeal, the Wyoming Supreme Court affirmed the state district court's order and remanded the matter to the district court for remand to the Division for a new decision consistent with the opinion. State ex rel. Wyoming Workers' Safety and Compensation Div. v. Johnson, 185 P.3d 16 (Wyo. 2008).[4] In affirming the state district court, the Wyoming Supreme Court noted that the Wyoming legislature

---

[3] Because the district court concluded there was no constitutional violation, it did not address defendants' other arguments raised in the motion to dismiss, including a qualified immunity defense.

[4] The Johnsons allege that Wyo. Stat. § 27-14-403(g)(i)(C) is unconstitutional both on its face and as applied by the Employees. As a result of the Wyoming Supreme Court's decision that the statute as it existed in 1993 did not allow for consideration of spousal income, the Johnsons' claim that the statute is unconstitutional is moot. The issue remains as to whether the Employees' denial of workers' compensation benefits based upon Ida Johnson's income impermissibly impinged upon the Johnsons' constitutional rights.

characterized its 1998 statutory amendment as a clarification of existing law regarding household income rather than a change in the status quo. Id. at 19. Therefore, the Wyoming Court concluded, "[t]he necessary inference is that the income of other household members has always been excluded from consideration."

## II. Discussion

We have jurisdiction of this appeal under 28 U.S.C. § 1291. As the sufficiency of a complaint is a question of law, we review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6). Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). "We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." David v. City & County of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996). In reviewing the complaint, we require "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982) (quoting § 1983). A civil rights

plaintiff proceeding under § 1983 must allege that some person has deprived him of a federally protected right. Houston v. Reich, 932 F.2d 883, 890 (10th Cir. 1991). Section 1983 does not provide a remedy for abuses that do not violate federal law. Collins v. City of Harker Heights, 503 U.S. 115, 119, 112 S.Ct. 1061, 1065, 117 L.Ed.2d 261 (1992). It does not provide a basis for redressing violations of *state* law. Jones v. City and County of Denver, 854 F.2d 1206, 1209 (10th Cir. 1988).

The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of liberty without due process of law. The liberty protected thereunder includes the right to marry. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639-640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974). The United States Supreme Court has recognized marriage as "the most important relation in life," Maynard v. Hill, 125 U.S. 190, 205, 8 S.Ct. 723, 726, 31 L.Ed. 654 (1888), "fundamental to [our] very existence and survival," Skinner v. Okla. ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and "one of the vital personal rights essential to the orderly pursuit of happiness by free men." Loving v. Virginia, 388 U.S. 1, 12, 1287 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967).

In addition to a liberty interest in the right to marry, the Fourteenth Amendment protects a liberty interest in the right of familial association. The

freedom of intimate association is "an intrinsic element of personal liberty." Roberts v. U.S. Jaycees, 468 U.S. 609, 619-20, 104 S.Ct. 3244, 3251, 82 L.Ed.2d 462 (1984); see also Trujillo v. Bd. of County Comm'rs, 768 F.2d 1186, 1188-89 (10th Cir. 1985). In Roberts, the Supreme Court held that application of the Minnesota Human Rights Act to compel the Jaycees to accept women as regular members did not abridge the male members' freedom of intimate association or their freedom of expressive association. In describing the right of intimate association, the Court distinguished between family relationships and other types of personal relationships – such as those between members of the Jaycees – which are less likely to give rise to this constitutional protection. The Court recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State . . . ." Id. at 617-18, 104 S.Ct. at 3249. Among those intimate human relationships are "[f]amily relationships, [which] by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." Id. at 619-20, 104 S.Ct. at 3250.

In this case, Richard and Ida Johnson have constitutionally protected liberty interests in their marriage and in their familial association. We now consider whether the Johnsons have stated a claim for deprivation of their liberty interests so as to support a cause of action under § 1983.

In Califano v. Jobst, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977), the Supreme Court considered a challenge to a Social Security Act provision that discontinued benefits to a disabled dependent child upon marrying a person who was ineligible to receive social security benefits. The Court noted that "there can be no question about the validity of the assumption that a married person is less likely to be dependent on his parents for support than one who is unmarried." Id. at 53, 98 S.Ct. at 99. Therefore, "it was rational for Congress to assume that marital status is a relevant test of probable dependancy," and that termination of a child's benefits upon marriage satisfied the constitutional test. The Court stated that the general rule terminating benefits upon marriage "is not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby." Id. at 54, 98 S.Ct. at 99. Upon review of the statutory classifications, the Court concluded that they were "legitimate exercises of Congress' power to decide who will share in the benefits of the [social security] trust fund", id. at 58, 98 S.Ct. at 102, and that the favored treatment of marriages between secondary social security beneficiaries did not violate the principle of equality embodied in the Due Process Clause of the Fifth Amendment.

Two months after Jobst, the Supreme Court decided Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). Zablocki involved the constitutionality of a statute prohibiting any Wisconsin resident "having minor

issue not in his custody and which he is under obligation to support by any court order or judgment" from marrying without first obtaining a court order granting permission to marry. Id. at 375, 98 S.Ct. at 675. Court approval could not be granted absent a showing that the support obligation had been met and the children were not likely to become public charges. Id.

The Milwaukee County Clerk, Zablocki, denied Redhail's application for a marriage license because Redhail had not obtained the statutorily required court order granting him permission to marry. Although Redhail did not petition the court for permission to marry, it was undisputed that he would not have been able to satisfy either of the statutory prerequisites for an order granting permission to marry. Id. at 378, 98 S.Ct. at 677.

The Supreme Court determined that the Wisconsin statute directly and substantially interfered with the right to marry. Id. at 387, 98 S.Ct. at 681. In reaffirming the fundamental character of the right to marry, the Court explained:

> [W]e do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.

Id. at 386, 98 S.Ct. at 681. As an example of reasonable state regulation, the Court cited Jobst, supra, where

> the rule terminating benefits upon marriage was not 'an attempt to interfere with the individual's freedom to make a decision as important as marriage.' 434 U.S., at 54, 98 S.Ct., at 99. The Social

- 11 -

Security provisions placed no direct legal obstacle in the path of persons desiring to get married, and . . . there was no evidence that the laws significantly discouraged, let alone made 'practically impossible,' any marriages.

Id. at 387, n. 12; 98 S.Ct. at 681, n. 12.

Courts have subsequently applied the Jobst/Zablocki analysis to cases involving claims of impermissible interference with the right to marry. Following the Tax Reform Act of 1969, many two wage-earner married couples were subjected to the "marriage penalty," where their combined tax burden, whether they chose to file jointly or separately, was greater than it would have been if they had remained single and filed as single taxpayers. In Druker v. Commissoner of Internal Revenue, 697 F.2d 46 (2d Cir. 1982), cert. denied, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983), the plaintiff taxpayers alleged that the "marriage penalty" was unconstitutional. The Second Circuit had no doubt that the "marriage penalty" had some adverse effect on marriage, but concluded that the adverse effect, "like the effect of the termination of social security benefits in Jobst, is merely 'indirect'; while it may to some extent weight the choice whether to marry, it leaves the ultimate decision to the individual." Id. at 50. The challenged tax rate structure placed no direct legal obstacle in the path of persons desiring to get married, it did not absolutely prevent anyone from getting married, and it did not attempt to interfere with the individuals' freedom to marry. The Second Circuit concluded that the "marriage penalty" did not

deprive the Drukers of a constitutional right. Id. at 51.

Similarly, in Mapes v. United States, 576 F.2d 896 (Ct. Cl. 1978), cert.

denied, 439 U.S. 1046, 99 S.Ct. 722, 58 L.Ed.2d 705 (1978), the United States

Court of Claims held that the tax rates resulting in the "marriage penalty" were

constitutional.

> The additional tax liability suffered by two-income couples who cannot avail themselves of the rates for single persons is an indirect burden on the exercise of the right to marry. It is suffered not for marrying but for marrying one in a particular income group. This does not rise to the level of an 'impermissible' interference with the enjoyment of a fundamental right.

576 F.2d at 901. "[T]he elevated tax burden might in fact dissuade some couples

from entering into matrimony, but does not present an insuperable barrier to

marriage." Id. Strict scrutiny is appropriate only where the obstacle to marriage

"operates to preclude the marriage entirely for a certain class of people." Id.

We have previously considered and rejected a claim similar to the

Johnsons'. In Martin v. Bergland, 639 F.2d 647 (10th Cir. 1981), the appellants,

husband and wife, challenged a regulation promulgated by the Secretary of

Agriculture that defined a husband and wife as a single person for purposes of a

statute limiting farm subsidy payments to $20,000 per person. In 1973, Congress

directed the Secretary to define the term "person" in order to limit farm subsidy

payments to farmers who kept their land idle. Appellants argued that the

Secretary's refusal to pay farm subsidy payments to both of them solely because

of their marriage denied them equal protection of the laws under the Fifth Amendment. Using the principles outlined in <u>Jobst</u> and <u>Zablocki</u>, we determined that the regulation was not such a direct and substantial burden on the freedom to marry that it should be strictly scrutinized. <u>Id.</u> at 649. We upheld the regulation under the rational basis test, finding that the husband-wife rule rationally furthers Congress' interest in limiting farm subsidy payments. <u>Id.</u> at 650.

We agree with the district court that the Johnsons have not established an impermissible interference with the right to marry or associate with family. Like the "marriage penalty" discussed in <u>Druker</u> and <u>Mapes</u>, and the farm subsidy regulation considered in <u>Martin</u>, the Employees' interpretation and application of the Wyoming statute did not present a direct legal obstacle in the path of persons desiring to get married. Nor did it absolutely prohibit a class of persons from getting married. Moreover, there is no plausible indiction that the denial of Mr. Johnson's claim for extended PTD benefits was an attempt to interfere with the Johnsons' freedom to make a decision as important as marriage. While the Johnsons may have suffered an indirect burden on their marriage, there was no direct and substantial burden on their freedoms to marry and to associate with family.[5]

---

[5] The Johnsons urge us to distinguish <u>Druker</u>, <u>Jobst</u>, <u>Zablocki</u>, and <u>Martin</u>. Those cases, they argue, involve social and economic legislation, whereas this matter involves a workers' compensation insurance fund authorized by the Wyoming Constitution to which covered employers make contributions. We decline to draw the suggested distinction. The analysis set forth in those cases

Because strict scrutiny does not apply, the Johnsons bear the "substantial burden of showing that there is no rational basis" for the challenged classification. Martin, 639 F.2d at 650. The extreme deference given under the rational basis test "suggests that it takes no special talent to come up with a rational basis for any scheme; the difficult task is to formulate a plan for which there is no rational basis." Id. (citations omitted). Nonetheless, the standard by which actions such as this must be judged "is not a toothless one." Id. (citations omitted). With these standards in mind, we conclude that the Employees' interpretation and application of the Wyoming statute bore a rational relationship to a legitimate state interest. Specifically, the Division's consideration of an employee's total household income, including the income of the employee's spouse, was rationally related to the state's legitimate interest in allocating limited workers' compensation funds to individuals most in need.

As previously discussed, the Wyoming Supreme Court recently concluded that the Wyoming statute at issue did not permit consideration of spousal income in determining entitlement to extended PTD benefits. The Employees' interpretation and application of the statute was therefore erroneous.[6] The fact

applies here, as in other cases where a citizen alleges that state action impermissibly interferes with the exercise of the constitutionally protected rights of familial association and marriage.

[6] Any rights the Johnsons may have for the violation of state law are not enforceable under section 1983. Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct.

that benefits were withheld in violation of Wyoming law does not alter the Fourteenth Amendment analysis set forth above. No federal constitutional rights were violated.

We therefore agree with the district court's conclusion that the Johnsons were not deprived of liberty interests secured under the United States Constitution and that the Johnsons do not state a cognizable claim under § 1983.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's order granting the motion to dismiss.

ENTERED FOR THE COURT


Gregory K. Frizzell
District Judge

---

2689, 61 L.Ed.2d 433 (1979) (remedy for violation of state tort law must be sought in state court); Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3rd Cir. 2004) ("Section 1983 does not provide a cause of action for violations of state statutes."); Romero v. Bd. of County Comm'rs, 60 F.3d 702, 705 (10th Cir. 1995); Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994) (violation of state law does not give rise to a federal cause of action under § 1983).